UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MAURICE RHOADES, | ) | CASE NO. 1:08 CV 1969 |
| Plaintiff, | )<br>) | JUDGE DAN AARON POLSTER |
| v. | )<br>) | |
| CUYAHOGA COUNTY<br>COMMISSIONERS, et al., | )<br>)<br>) | MEMORANDUM OF OPINION<br>AND ORDER |
| Defendants. | )<br>) | |

On August 13, 2008, pro se plaintiff Maurice Rhoades filed the above-captioned action under 42 U.S.C. § 1983 against the Cuyahoga County Commissioners, Cuyahoga County Commissioner Jimmy Dimora, Cuyahoga County Commissioner Timothy F. Hagan, Cuyahoga County Commissioner Peter Lawson Jones, Cuyahoga County Employee Dennis Madden, Cuyahoga County Employee Lee Trotter, Cuyahoga County Human Resources Director Joseph Nanni, "Director of Central Services" Jay Ross, "Director of Protective Services" Efrein Speigner, Cuyahoga County Employee Thomas Bradley and Cuyahoga County Employee Carol Carrington. In the complaint, plaintiff asserts that the defendants violated his First and Fourth Amendment rights. He seeks monetary damages in the amount of $ 400,000.00.[1]  Plaintiff also filed an Application to Proceed In Forma Pauperis.  That Application is granted.

---

[1] Mr. Rhoades's demand is unclear.  He states that he is seeking compensatory damages in the amount of "Three Hundred-Fifty Thousand Dollars."  He then lists his demand numerically as "350,000,000.00."  He adds that he is also seeking $ 50,000 in compensatory damages.  The Court presumes that he intended to seek $ 350,000 as he indicated in writing, and not $ 350,000,000.00.

**Background**

Mr. Rhoades claims that he attended a meeting of the Cuyahoga County Commissioners on March 22, 2007.  He states that he made a "public presentation as it related to minority contracting opportunities on local construction projects and project labor agreements." (Compl. at 4.)  He contends that he "did use, or incorporate, stylistically varied words in his public speech.  Still Plaintiff pro se, was deeply in earnest with passions that approximate those of Civil War."  (Compl. at 5.)  He alleges that he "did achieve his mission, or goal."  (Compl. at 5.)  Mr. Rhoades claims his presentation was positively received by the commissioners.

Nevertheless, Mr. Rhoades claims that at some point during his speech, Commissioner Peter Lawson Jones had "an adverse reaction ."  (Compl. at 6.)  He contends that this "adverse reaction caused Plaintiff pro se, to suffer several injuries."  (Compl. at 6.)  In support of this statement, he offers that on August 13, 2007, five months after the meeting in which he spoke, Peter Lawson Jones wrote a poem which was published in the "Tipoff" feature of Plain Dealer Columnist Michael K. McIntyre.  The poem was a retort to a comment by Commissioner Timothy Hagan published in Tipoff a week earlier.  Mr. Hagan joked to reporters that his hand was bandaged because he had smacked Mr. Lawson Jones.  Mr. Lawson Jones responded with the poem entitled "The Big Throwdown in the Big C-Town" which proclaimed:

> Timothy F. Hagan, who loves to wise crack
> Claimed he injured his hand on my head with a smack
> It was reported in "Tipoff," read all over town.
> Inquiring minds queried would this I take lying down?
> My answer is "No, sir," "No Ma'am" and "No way,"
> And that's why I've brought boxing gloves here today.
> So standing in this corner deadly as a rattler,
> Is the man you now know as the Marcel Breuer Battler.
> And whom has he challenged to square off against him?
> Just the Medical Mart Mauler aka Taxin' Tim.
> Though the bout's cost of admission now's an additional quarter cent,
> It's gonna be more entertaining than watching Maurice Rhoades, Adele Eisner or Norm Edwards vent.
> Now as to the outcome there is really no doubt.
> I can't let someone old as Methuselah knock me out!
> Alas, only one of can wear the BOCC pugilism crown,
> So like my beloved Breuer Tower, Tim Hagan's goin' down.

Michael K. McIntyre, *Jones Parries Goad with Rhyming Ode*, CLEVELAND PLAIN DEALER, August

13, 2007, at B1. Mr. Rhoades claims that Mr. Lawson Jones "did mock slander, libel and defame" him and "implie[d] that Plaintiff pro se, is, 'an angry black man.'" (Compl. at 7.) He indicates that Mr. Lawson Jones was not serving the interests of the community and asks that he be compensated for the "defamatory falsehood." (Compl. at 10.)

In addition, Mr. Rhoades claims he visited the Cuyahoga County Administration Building on November 9, 2007. He had requested copies of certain public records and had received a telephone call from a county employee informing him that the documents were ready. He claims he left voice mail messages for Lee Trotter and Thomas Bradley asking for "safe, unobstructed passage or for permission to pick up, and retrieve Plaintiff pro se aforesaid public records request." (Compl. at 11.) He contends he entered the building at a side entrance, crossed the lobby, and stepped onto an elevator when he was stopped by a security officer. She asked him to return to the security check point at the main entrance of the building. He claims he complied with her request. Other security officers responded, including supervisor, Thomas Bradley, who questioned Mr. Rhoades. Mr. Rhoades reminded him of the voice mail he left concerning the need to enter the building to pick up his public records request. Mr. Rhoades was then permitted to get on the elevator. Mr. Rhoades contends that several security officers followed him to the fourth floor of the building and waited while he conducted his business. They then followed him until he was out of the building. He claims that they violated his Fourth Amendment rights and retaliated against him for his speaking at the March 22, 2007 Cuyahoga County Commissioners meeting.

## Analysis

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] Neitzke v.

---

[2] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the
(continued...)

Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

As an initial matter, many of the individuals named as defendants have little or no connection to the claims set forth by Mr. Rhoades. There are no allegations against Mr. Dimora, Mr. Hagan, Mr. Madden, Mr. Trotter, Mr. Nanni, Mr. Ross or Mr. Speigner. Plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. Rizzo v. Goode, 423 U.S. 362, 371 (1976); Mullins v. Hainesworth, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). The complaint simply contains no facts which reasonably associate these defendants to any of the claims set forth by plaintiff.

The claims against the Cuyahoga County Commissioners and the claims against the defendants in their official capacities are redundant. An official capacity damages action against a state or municipal officer is the equivalent of a damages liability action targeted against the public entity he or she represents. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989). Because all of the defendants are employees of Cuyahoga County, all of the claims asserted against the defendants in their official capacities, are claims against the county.

As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a respondeat superior theory of liability. See Monell v. Department of Soc. Servs., 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. A municipality can therefore be held liable when it

---

(...continued)
reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." Id. at 690; DePiero v. City of Macedonia, 180 F.3d 770, 786 (6th Cir. 1999).  The complaint contains no suggestion of a custom or policy of Cuyahoga County which may have resulted in the deprivation of a federally protected right of the plaintiff.

The claims against the remaining defendants are without merit.  Mr. Rhoades first asserts that Peter Lawson Jones interfered with his right to free speech and retaliated against him.  He contends that when he spoke at a meeting of the Cuyahoga County Commissioners, Commissioner Peter Lawson Jones did not accept his point of view and later referred to him as "entertaining."  The First Amendment protects the right to deliver a message, not the right to have the listener accept and act upon its content.  Clifford v. Moritz, 472 F.Supp. 1094, 1101 (S.D. Ohio 1979).  There is no indication in the complaint that Mr. Lawson Jones interfered with the plaintiff's ability to speak at the meeting or that the Commissioner's comment in the poem could be considered retaliation for the exercise of that right.  See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

Mr. Rhoades's claim against Mr. Bradley and Ms. Carrington under the Fourth Amendment is also without merit.  He indicates that prior to attempting to pick up the copies of the public records he requested, he telephoned two security officers and asked for permission to enter the County Administration building.  He does not explain why permission was needed.  He alleges that he entered the building at the side entrance and was detained briefly at the security desk in the lobby before being permitted to go to the fourth floor to collect his copies.  He claims security officers followed him through the building.  Administrative stops and searches of personal belongings prior to entering government building for purposes of maintaining security do not violate the Fourth Amendment.  See Johnston v. Tampa Sports Authority, 530 F.3d 1320 (11th Cir. 2008); U.S. v. Krug, 34 F.Supp.2d 1064, 1068 (M.D.Tenn.1999). There are no facts alleged in the complaint which suggest that Mr. Rhoades was detained for any length of time or for any purpose prohibited by the Fourth Amendment.  Moreover, police observation in a public place does not constitute a "seizure" for constitutional purposes.  U.S. v. Mask, 330 F.3d 330, 337-39 (5th Cir.

2003.).

## Conclusion

Accordingly, Plaintiff's Application to Proceed In Forma Pauperis is granted and this action is dismissed pursuant to 28 U.S.C. § 1915(e). The court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

                                               */s/Dan Aaron Polster 9/17/08*
                                               DAN AARON POLSTER
                                               UNITED STATES DISTRICT JUDGE

---

[3] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.